PER CURIAM:
This claim was submitted to the Court for decision upon a Stipulation entered into by claimant and respondent wherein certain facts and circumstances of the claim were agreed to as follows:
1. Claimant National Engineering and Contracting Company (hereinafter referred to as National) is an Ohio corporation with its principal place of the bid of business in Strongsville, Ohio, and is a pre-qualified construction contractor in the State of West Virginia.
2. T he r espondent is a S tate a gency de legated w ith the responsibility o f designing, planning, and administering public highway projects in the State of West ■ Virginia.
3. This claim consolidates two claims on highway construction contracts. Both contracts were entered into in 1995 to perform certain repair work on 1-64 in Cabell County. The first project is commonly referred to as the Mud River Bridge Project and is Project No. S306-64-25.21, 26.45, and 27.10, and the second project, commonly referred to as the Mud River/Indian Meadows Bridge Project, is Project No. 27.110.
4. As part of the terms of the contract for Project No. S306-64-25.21, 26.45, and 27.10, National was required to furnish and erect about 13,300 lineal feet of temporary concrete median barrier conforming to the bid proposal for the purposes of maintaining two-way traffic through the project. The temporary barriers called for in the contract utilized a “pin and loop” positive connection system.
5. National made arrangements for concrete median barriers to be supplied by a subcontractor, Swank Sign Erection, Inc., which had' furnished median barriers *329 for other highway projects. Specifically, the median barrier company had furnished barriers on a project on Route 22 near Weirton, as well as for a project on 1-79, commonly referred to as the FBI Interchange project. The same type barrier was also used on other projects performed by other construction contractors for respondent.
6. On those other projects, the median barrier company had furnished what is commonly referred to in the industry as a Pennsylvania or PennDOT barrier, which is so named as it is a commonly used median barrier that is made to special Pennsylvania Department of Transportation standards. The PennDOT barrier has a “slot and plate” connection rather than a “pin and loop” connection, and has other design features that may be distinguished on the plan detail sheets for each respective type of barrier. On the other projects, the median barrier company sought and received permission from respondent to use the PennDOT barrier.
7. Although the PennDOT barrier did not meet project proposal specifications for this project as bid, the median barrier company sought approval from respondent to use the PennDOT barrier on this project.
8. On February 9, 1996, respondent informed National that the PennDOT median barrier could be used long as respondent was furnished with a certification that the barrier complied with NCHRP 350 criteria. This was the first time that respondent had ever made this alternative condition a part of the approval process.
9. After calling the Pennsylvania Department of Transportation to check on the standard of the PennDOT barrier, the subcontractor to National certified to respondent that the PennDOT median barrier met the NCHRP 350 standard. However, the median barrier did not meet that standard. The parties do not believe that the median barrier company intentionally misrepresented this fact, but rather did so out of mistake.
10. At that time, no barrier in the world had been tested or certified as meeting the NCHRP 350 standard since it was a newly adopted standard. The contract did not require a contractor to use median barrier that met the NCHRP 350 standard.
11. The PennDOT barrier did meet the NCHRP 230 standard which was the NCHRP standard then in place.
12. The median barrier company began to deliver the median barrier to the project prior to having received the required approval of the use of the barrier by respondent.
13. On April 22, 1 996, respondent informed National that it would not approve the use of the PennDOT barrier because this particular barrier met neither the original bid proposal specifications nor the NCHRP 350 standard. National was given a third alternative of imbedding the PennDOT barrier two inches into a slot in the pavement to provide lateral support; however, National determined that this requirement would make the PennDOT barrier too costly to use on the project.
*330 14. National ultimately replaced the PennDOT barriers with a WVDOH type barrier, which also did not meet NCHRP 350 standards, but which did conform to the original plan documents. The removal and replacement of the PennDOT barriers cost $209,047.46 for which National now makes this claim.
15. National also contracted with respondent in 1995 to perform certain repair work on project no. S306-64-20.19 and respondent rejected the use of the PennDOT barrier as the temporary concrete barriers on this project as well which National alleges the cost for the removal and replacement of the barrier at $49,156.06.
16. The parties stipulate to the admission of the project proposal plans and contract documents, including all standard and supplemental specifications, special provisions and detail sheets, including the WVDOH Standard Detail, “Temporary Concrete Barrier”, Standard Sheet GR 10, Prepared 1-1-93; the admission of photocopies of commonwealth of Pennsylvania DOT RC-57, “CONCRETE MEDIAN BARRIER”, recommended 3-30-92, comprising three sheets; and the deposition of Charles Shaver, a construction engineer for respondent at the time of these projects, with attached exhibits.
The Court, having reviewed the stipulation, memoranda of law submitted by the parties, the exhibits, and the facts and circumstances of this claim, finds that claimant, National Engineering and Contracting Company, did not establish by a preponderance of the evidence that the respondent breached any of its contractual duties to National. The Court finds that National made a unilateral mistake by relying upon the mistaken misrepresentation of its subcontractor, Swank Sign Erection, Inc., that the PennDOT barrier met the contractual requirements.
The respondent did not allow the use of the PennDOT barrier brought to the site by National due to the fact that it did not meet the contractual requirements for concrete barrier on these two projects. N ational had three alternatives under the contract. First, it could have used the GR10 barrier (the “pin and loop” barrier) which was available to it and which met all contractual conditions for temporary barriers. Second, National had the alternative of providing barriers which meet the NCHRP 350 standards. Third, National could have chosen to comply with respondent’s instructions to embed the delivered PennDOT barriers to meet respondent’s requirements. At the time that these projects were let to bid, the NCHRP 350 standard was replacing the 230 standard for temporary barriers. National made the decision to have the PennDOT barriers delivered to the project sites p rior to r eceiving t he r equired a pproval f rom r espondent. T hese t emporary barriers use the “slotted plate connection” instead of the “pin and loop.” The slotted plate connection barriers were required to meet the NCHRP 350 standards. National relied upon the representation of its subcontractor that the PennDOT barriers met the NCHRP 350 standards. Based upon this representation, National proceeded to have *331 the PennDOT barriers delivered to the project sites only to be informed by respondent that these barriers did not meet the NCHRP 350 standards.
It is the opinion of the Court that National placed itself in an unfortunate position by having the delivery of the PennDOT barriers made to the project sites only to find out that the barriers would not be used in light of its decision to reject respondent’s requirement that these be embedded. Any financial loss on the part of National was due to its reliance on its own subcontractor’s representations that the barriers were in compliance with the NCHRP 350 standard. Further, the Court is of the opinion that respondent acted in a fair and reasonable manner in its insistence upon a safe and secure barrier being used as the median barrier for traffic upon 1-64.
Accordingly, the Court has determined that National has failed to substantiate its claim against the respondent, and further, the Court is of the opinion to and does hereby deny this claim.
Claim disallowed.